## GENTRY *v.* GULF & S. I. R. Co.

[67 South. 849.]

1. DAMAGES. *Physical examination. Power of court.*

In a suit for personal injuries, the trial judge has no power to appoint physicians and require parties to a suit to submit their bodies to the inspection of the physicians designated by the court.

2. TRIAL. *Instructions. Burden of proof.*

In an action for personal injuries by the derailment of a train an instruction is erroneous, which tells the jury to find for the defendant, if they are in any doubt as to whether plaintiff was injured or not in the derailment of the train and that such doubt must be removed by a clear preponderance of the evidence, since the law imposes on the plaintiff no burden to remove all doubt from the minds of the jury.

APPEAL from the circuit court of Simpson county.

HON. W. H. HUGHES, Judge.

Suit by J. W. Gentry against the Gulf & Ship Island Railroad Company. From a judgment for defendant rendered on a trial after granting a new trial after

judgment for plaintiff, he appeals. Judgment in second trial reversed and cause remanded, but verdict in first trial not reinstated.

The facts are fully stated in the opinion of the court.

*Hilton & Hilton* and *Hirsh, Dent & Landau*, for appellant.

If the evidence is not conflicting as to whether the plaintiff was injured at the time of the wreck and suffered throughout the day, and intensely for two or three hours, and had to be helped off the train, then the instructions given for the defendant to the effect that the jury was to pass on the case according to the doubt in their minds, and were to find for the defendand if they were in doubt as to whether there was anything now (at the time of the second trial), the matter with the plaintiff, and the further instruction to the effect that if they believed the plaintiff voluntarily stood in the aisle and that caused the injury, was manifestly erroneous for the reasons: (a) The jury was directed to try the case on doubt rather than preponderance of evidence; (b) the jury was directed by article three in the seventh instruction that they should find for the defendant if they were in doubt as to whether he was injured now or not, and if they were in doubt as to what caused it; which instruction told the jury to ignore any compensation for temporary injuries; and which also told the jury that if they were in doubt as to which of the two causes caused the suffering now, they should find for the defendant. See, 29 So. 646; (c) by the ninth instruction the court said to the jury that it was negligent for the plaintiff to stand in the aisle and his negligence would preclude a recovery for any injury sustained at the time of the wreck; thus annulling the comparative negligence statute, chapter 135, Acts of 1910, which question of negligence was solely the province of the jury to determine, and

only reduced plaintiff's damages, if they determined it was.

If the evidence was conflicting and approximates an equipoise, the instructions were erroneous, and are presumed to have had its effect in procuring the verdict, which will necessitate a reversal of this case. See *Harper et al.* v. *Tapley, et ux.,* 35 Miss. 506; *Norfleet* v. *Sigman,* 41 Miss. 631.

When an erroneous instruction is given the error is not corrected by the giving of another, setting out a rule in direct conflict with the rule stated in the erroneous instructions. The contradiction between the two leaves the jury without any safe guide. See *House* v. *Fultz,* 13 S. & M. 39. See pages 41 and 42 of the opinion; *Southern R. R. Co.* v. *Kendricks,* 40 Miss. 374. See pages 387 and 388 of the opinion; 90 A. M. Dec. 332; *Herndon* v. *Henderson,* 41 Miss. 584; See page 601 of the opinion; *Miss. Central R. R. Co.* v. *Miller,* 40 Miss. 45; see page 48 of the opinion; *I. C. R. R. Co.* v. *McGowan,* 92 Miss. 603.

Where the evidence is conflicting it is essentially important that there should be no conflict in the instructions. *Chapman* v. *Copelant,* 55 Miss. 476.

The eighth assignment of error was the appointment of Drs. Womack and Smythson as a board of physicians to examine plaintiff and report to the court. This brings us to a new point for adjudication in this state.

The first and leading case which we will cite in support of the contention that the court should not have sustained the order appointing physicians to make the examination of the plaintiff is *Union Pacific Ry. Co.* v. *Clara L. Botsford,* 35 L. Ed. (U. S.) 734; 141 U. S. 250.

The case of *Auston and N. Western R. R. Co. et al.* v. *John C. Chuck,* 97 Texas, 172; 1 Am & Eng. Ann Cas., 261. One of the best reasoned cases supporting our case is found in 23 L. R. A. (N. S.) 462; *Jennie*

*Larson* v. *Salt Lake City, et al.*, 34 Utah, 318, 97 Pac. 483. This case deals with the question as to the inherent power of the court to compel plaintiff in an action at law who has sued to recover damages for personal injury to submit to a physical examination by defendant physicians. 23 L. R. A. (N. S.) 469.

In this case the plaintiff was submitted by the court to the indignity of a trespass, to a stripping bare and exposure and examination of his person, and had to make statements to physicians before trial concerning his injury, over his protest and objection.

*Wells, May & Sanders,* for appellee.

Complaint is made that the court should not have appointed Drs. Womack and 'Smithson as a board of physicians to examine appellant, for the purpose of testifying as to their findings in the case. The court appointed these physicians because he believed them to be competent, skilled and experienced physicians and surgeons, unbiased and disinterested, for the purpose of ascertaining the truth. They were no more physicians for the appellee than they were physicians for appellant. They were instructed by the court to report to the attorneys for both sides the result of their diagnosis and to answer any and all questions and to hold themselves in readiness to testify at the request of either the plaintiff or the defendant. They were not called by the plaintiff, but were called as witnesses for the defendant, and much ado was made over the testimony of the "court doctors," as they are dubbed in the brief of counsel. If complaint should be made of any undue prominence being given to their testimony, the ground of such complaint must be found elsewhere than in the instruction requested by appellee.

When the trial court became conversant with the authorities dealing with the subject of the appoint-

ment of physicians and surgeons to make physical examination in such cases, he instantly became convinced that this was the ideal case for the exercise of such judicial discretion. This is evidenced by the fact that this was one of the grounds upon which he set aside the verdict at the first trial.

We will not burden this court with a discussion of the propriety of the trial court's action in appointing these physicians, but will content ourselves with the citation of the following authorities: Wigmore on Evidence, sections 2194 and 2220, especially the latter.

The rule as to corporal inspection, as stated in volume 2, page 297, section 1014, Elliot on Evidence, is as follows: "It has been held in some cases that a party as a witness in a civil suit may refuse to exhibit his person to the jury, or to persons appointed by the court to inspect. But the weight of authority is to the effect that it is within the sound discretion of the court, and when not injurious to health and offending decency and upon proper application there may be such inspection." *Southbend* v. *Turner*, 156 Ind. 418; 60 N. E. 271; 83 Am. St. Rep. 200.

As to sustaining the views announced in this case, many cases are cited from the several states of Iowa, Alabama, Arkansas, Georgia, Kansas, Kentucky, Michigan, Missouri, Pennsylvania, Minnesota, Nebraska, Ohio, Texas and Wisconsin.

In the case of *Western Union Glass Mfg. Co.* v. *Schoeninger*, 42 Colo. 357, 94 Pac. 342, 126 Am. St. Rep. 163, 15 L. R. A. (N. S.) 663, decided in March, 1908, the supreme court of Colorado establishes beyond cavil, in our opinion, by the reasoning employed and the multitude of authorities cited, not only that the court has the power to order a physical examination, but in a case like the one under consideration, the failure of the court to do so is reversible error. We refer the court particulaly to the opinion in this case.

In 15 L. R. A. (N. S.) 666, the annotator has collated a number of the best considered cases announcing the rule for the guidance of the court in exercising its discretion to order physical examinations, and the subhead, "Discretion Abused," we especially invite the court to consider.

In addition to the above authorities, we call attention to the following: *Belt Electric Line Co.* v. *Allen,* 122, Ky. 551, 80 Am. St. Rep. 374, 44 S. W. 89; *Lane* v. *Spokane Falls & N. R. Co.,* 21 Wash. 119, 75 Am. St. Rep. 821, 46 L. R. A. 153, 57 Pac. 367; *Richmond & D. R. Co.* v. *Childress,* 82 Ga. 179, 14 Am. St. Rep. 189, 9 S. E. 602, holding it within the discretion of the courts to order physical examination of the plaintiff in negligence action; and *St. L. S. W. R. C.* v. *Dobbins,* 60 Ark. 481, 30 S. W. 887; *Johnston* v. *So. Pac. Co.,* 150 Cal. 841, sustaining power of courts to order physical examination of plaintiff in action for negligent injury; and *Greaves* v. *Battle Creek,* 95 Mich. 266, 35 Am. St. Rep. 561, 19 L. R. A. 641, 54 N. W. 757, sustaining the power of the court to compel plaintiff to exhibit injured arm to jury.

We deem it unnecessary to multiply citations upon this proposition, but numerous other authorities may be found in 23 L. R. A. (N. S.) 463, case note.

Cook, J., delivered the opinion of the court.

This action was begun in the circuit court by appellant, seeking to recover damages for injuries inflicted on him by the negligence of the appellee railroad company. At the first trial of the case appellant was awarded judgment for one thousand five hundred dollars. A motion for a new trial, among other things, set up newly discovered evidence. Without here considering any other ground for a new trial, we think the trial court properly set aside the verdict of the jury and

granted defendant a new trial, because the newly discovered evidence was very pertinent, and may have controlled the verdict in the second trial. The action of the court in granting a new trial being proper, it follows that the motion of appellant to reinstate the former verdict will be overruled.

We will now consider the second trial, which resulted in a verdict for defendant. Upon application of defendant the court appointed two physicians to examine plaintiff. Plaintiff was compelled to submit to a physical examination by the court's physicians. When these physicians were on the stand, testifying for defendant and against plaintiff, it was made known to the jury that they were chosen representatives of the judge of the court. This was done over the objection of plaintiff. It is quite clear to our minds that the quality of the testimony given by these experts was thus much magnified and unduly impressed on the minds of the jury. And this is one of the reasons why courts are denied the power to appoint expert witnesses and compel persons to submit their bodies to their inspection. We cannot admit that physicians, or other experts, appointed by a court at the request of a party to a lawsuit, are more reliable and more disinterested than are others of like attainments and professional standing, simply because the others have given expert testimony at the request of a party to the suit. There is nothing in the education and training of a judge that peculiarly qualifies him to discriminate in the selection of medical experts, and yet there is little room to doubt that the ordinary juror would give undue weight to the judge's nominee. In a recent case this court has held that the trial judge is without power to appoint physicians and require parties to a suit to submit their bodies to the inspection of the physicians designated by the court. *Y. & M. V. R. R. Co.* v. *Robinson*, 65 So. 241. It was error for the court to assume this power in this case.

Several of the instructions given at defendant's request should not have been given. As a sample, we quote the fifth instruction, viz.:

"The court instructs the jury, for the defendant, that if they are in doubt as to whether plaintiff was injured or not in the derailment of the train, and this doubt cannot be removed by a clear preponderance of the evidence in the case, the verdict of the jury should be, 'We, the jury, find for the defendant.' "

This instruction imposes on a plaintiff a greater burden than the law imposes on the state in a criminal trial. In a criminal trial the state must prove its case beyond all reasonable doubt. By this instruction the plaintiff must remove all doubt from the minds of the jury—and that is not all; the plaintiff must remove all doubt —"by a clear preponderance of the evidence." The plaintiff must establish his right to recover by a preponderance of the evidence. Whenever the jury is satisfied that the plaintiff has proven his case, the plaintiff is entitled to recover. The law imposes on the plaintiff no burden to remove all doubts from the minds of the jury.

This instruction is misleading, and calculated to do much harm. Lawsuits must be tried under reasonable rules and regulations. It is reasonable to require the party who asks relief to satisfy the jury that he is entitled to it. It is unreasonable to require the plaintiff to remove all doubts which may find lodgment in the brain of some skeptical juror. This instruction, and others in this record, cast on the plaintiff this burden.

We refuse to reinstate the former verdict; but the judgment of the court in the last trial is reversed, and the cause remanded.

*Reversed and remanded.*