ELLIS v. ELLIS.

(Division A. May 4, 1931. Suggestion of Error Overruled June 1, 1931.)

[134 So. 150. No. 29356.]

346

See, also, 152 Miss. 836, 119 So. 304, 125 So. 563.

**G. B. Herring** and **F. S. Dunning,** both of Canton, for appellants.

Powell, Harper & Jiggitts, of Jackson, for appellants.

**W. H. Cox,** of Jackson, for appellee.

Argued orally by **G. B. Herring** and **F. S. Dunning**, for appellant, and **W. H. Cox**, for appellee.

**Cook, J.**, delivered the opinion of the court.

On September 20, 1927, George B. Ellis was married to Miss Lottie Simmons, and on September 22, 1927, he executed a will devising and bequeathing all his real and personal property to Mrs. Lottie Simmons Ellis, who was likewise named therein as administrator of his estate, the subscribing witnesses to this will being D. L. Baker and his wife, Mrs. Kate C. Baker. On October 8, 1927, George B. Ellis died, and thereafter the aforesaid will was admitted to probate in common form. Thereafter the appellant, William Kirby Ellis, a brother of the deceased, filed a bill of complaint in the chancery court of the first district of Hinds county seeking to cancel the said will on the grounds, first, of want of testamentary capacity of the testator at the time of the alleged execution of the will, and, second, that the alleged will was a forgery. The appellant herein, William Kirby Ellis, filed with his bill of complaint a previous will executed by his brother George B. Ellis, deceased, in which the appellant was named as beneficiary.

The appellee herein, Mrs. Lottie Simmons Ellis, answered the bill of complaint, and specifically denied that the said will of George B. Ellis dated September 22, 1927, was a forgery, and also denied that the said George B. Ellis was not, on September 22, 1927, fully capable of executing said will, and charged the fact to be that he was then capable in every respect to execute the will, and that said instrument was genuine and the act of a free and understanding will and capable mind. Thereupon an issue devisavit vel non was made up and a jury impaneled to try the issues made by the pleadings, that is, testamentary capacity of the testator, and forgery. At

the conclusion of the testimony, the court peremptorily instructed the jury to find in favor of the proponent of the will on the issue of testamentary capacity, and, upon the conflicting testimony bearing upon the issue as to whether or not the will was forged, the jury returned a verdict in favor of the proponent, and upon this verdict the court entered a decree establishing the said will as the true last will and testament of the deceased.

Upon the trial of the cause, the appellee proponent of the will dated September 22, 1927, first introduced a marriage license authorizing the celebration of the rites of matrimony between her and George B. Ellis, testator, and the certificate of an officer that he performed the marriage ceremony between them on September 20, 1927, and also introduced the record of probate of the will, and also the testimony of the two subscribing witnesses thereto, who testified that at the time of the execution of the will the testator was apparently not under the influence of liquor, nor any narcotic nor drug; that the will was duly and properly executed by the testator in their presence; that they subscribed their names thereto in his presence; and that the testator was then perfectly normal, was in the full possession of his mental faculties, and was fully capable of executing a will or transacting any other business. On the cross-examination of these witnesses, they were examined at length as to all the circumstances surrounding the marriage of the testator and Miss Lottie Simmons on the 20th of September, two days before the execution of the will, and it was developed that the testator had been an inmate of a hospital for the insane, and had been released therefrom about nine months before his marriage, and that during the period intervening between his release from the hospital and his death he lived in the home of the subscribing witnesses, Mr. and Mrs. Baker.

The contestant offered numerous witnesses who testified as to all the circumstances surrounding the is-

suance of the license for the marriage of the testator and the proponent of the alleged will, and the consummation of this marriage, this testimony being offered in an attempt to show that the testator was impersonated at a pretended marriage, and that this pretended marriage was a part of a fraudulent scheme and conspiracy to secure the property of the deceased, which culminated in the forgery of the alleged will. Upon the issue of testamentary capacity, the testimony showed that on September 18, 1926, the testator was committed to the Mississippi Insane Hospital as a drug addict, and was discharged therefrom as fully cured on January 29, 1927, and that on February 28, 1927, by a decree of the chancery court of Hinds county, the guardian of his person and estate, who had been previously appointed, was discharged, and the control and management of the testator's property was fully restored to him. The contestant offered testimony tending to show that after he was discharged from this hospital the testator continued to use intoxicating liquor and certain narcotics and drugs, and particularly bromedia, luminol amytol, and also offered the testimony of experts to show that these drugs, when taken in excessive quantities, produced mental derangement and delusions, and that they will produce this mental condition within a short time if taken regularly every day. He also offered as a witness A. C. Burnett, a druggist, who testified that on several occasions between February, 1927, and October, 1927, he sold to the testator certain quantities of the above-named drugs; and that on one occasion during that period of time he saw the testator when he appeared to be mentally deranged from the effects of drugs. By this witness the contestant also offered a large number of sales tickets of the Burnett Pharmacy which purported to show sales of drugs to the testator during the period from February to October, 1927. These sales tickets were taken from the files of the Burnett Pharmacy, and a number of them.

were identified by the witness, Burnett, as having been made by him, and these tickets were admitted in evidence. As to the other tickets, there was no identification or testimony showing that they were original entries, correctly kept, and made in the due course of business, other than the fact that they were taken from the files of the Burnett Pharmacy, and, upon objection of the proponent, these tickets were excluded.

In rebuttal, the proponent, without objection, testified in detail as to the circumstances of her marriage to the testator and the execution of the will by him, and that, at the time of the execution of the will the testator was not under the influence of any intoxicating liquor or drug, and was in the full possession of his mental faculties, and capable of executing a will or transacting any other business. She also offered the testimony of a physician to the effect that he attended the testator twice between the date of his marriage on September 20, 1927, and his death on October 8th thereafter, and that on each of these occasions, although he was suffering much pain, he appeared to be perfectly normal mentally and capable of executing a will or transacting other ordinary business. Upon the conclusion of the testimony, the court peremptorily instructed the jury to find for the proponent of the will on the issue of testamentary capacity.

Upon the issue as to whether the signature to the will was the genuine signature of the deceased or was a forgery, both sides offered the testimony of handwriting experts and others who were familiar with the handwriting of the deceased, and also offered, for purposes of comparison, several documents containing the admitted signature of the deceased, and upon the sharply conflicting evidence bearing upon this issue, which was submitted to the jury under instructions of the court, the jury found in favor of the genuineness of the signature to the will.

The appellant first assigns as error an instruction granted to the proponent to the effect that she was the lawful wedded wife of George B. Ellis on and after September 20, 1927, and that she was the lawful widow of the deceased. As hereinbefore stated, the appellant had offered testimony tending to cast doubt and suspicion upon the validity of the marriage of the proponent and the testator, which was admitted by the court only for the purpose of showing a motive or purpose to acquire the property of the testator by fraud, and the forgery of the will, and the appellant contends that this instruction destroyed the force and effect of this testimony. Without some instruction limiting the testimony, it might have been understood by the jury as being offered in an effort to invalidate the marriage of the testator to the proponent of the will. The validity of this marriage was in no way challenged by the pleadings, and was not involved in this proceedings, and, the marriage having been shown by the introduction of the marriage license and certificate of the officer who performed the marriage ceremony and the testimony of the witnesses who were present at the time the marriage was consummated, the appellee was entitled to an instruction informing the jury that upon this record the marriage must be treated as valid, and consequently no error was committed in granting the instruction complained of.

The appellant next complains of the refusal of three instructions to the effect that, although the jury should find in favor of the contestant, the widow, Mrs. Ellis, would still have the right to renounce the will in favor of the contestant and take by descent one-half of the estate. These instructions were properly refused. It was the province and duty of the jury to determine issues of fact submitted to it, and the manner in which the property would descend or be distributed in the event they found against the validity of the will was no concern of the jury.

The appellant next complains of the exclusion of certain sales tickets of the Burnett Pharmacy, which were offered for the purpose of showing sales of certain drugs to the testator. Conceding for the purpose of this decision that these tickets would be admissible in this proceeding between third parties having no interest in the books of account of this drug store, if they had been properly identified, still we think the court committed no error in excluding the tickets that were excluded, for the reason that they were not sufficiently identified as being original entries made in the course of business of this pharmacy. The mere fact that they were taken from the files of this business, without any other identification, was not sufficient to render them admissible in evidence in this cause.

The appellant next assigns as error the peremptory instruction granted to the proponent of the will on the issue of testamentary capacity of the testator on the date of the will. The testamentary capacity of a testator is to be determined as of the date of the will, and, after a careful and repeated examination of all the testimony bearing upon this issue, we think the court committed no error in granting this instruction. The testimony does show that the testator had been confined in a hospital for the insane from September, 1926, to February, 1927, but it further shows that he was discharged therefrom after having been declared to be fully cured and restored to his normal mentality. There was expert testimony to the effect that a person who has once been a drug addict is likely to again succumb to the habit, and that an excessive and continued use of certain named drugs will produce mental derangement. There is some testimony tending to show that about the time of the execution of this will the testator was using these named drugs, but there was nothing to show the quantity or that he had become so addicted to their use as to render him mentally incapable of executing a will or transacting

any other ordinary business. On the other hand, the positive and uncontradicted testimony of several witnesses was to the effect that the testator was not under the influence of these drugs at or about the time of his marriage and the execution of the will, and that at that time he was in the full possession of his mental faculties, and was fully capable of executing a will or transacting any other business.

The appellant next complains of an instruction granted to the appellee to the effect that the introduction of the proceedings admitting the will to probate was prima-facie evidence of its genuineness and validity, and that the burden of proof was on the contestant to prove by clear and convincing competent evidence that said will is a forgery. In response to this assignment, the appellee contends that the error, if any, in this instruction was cured by an instruction granted to the appellant which expressly informed the jury that the probate of the will was only prima-facie evidence of its genuineness, and the burden was on the appellee to prove by a preponderance of the evidence that the signature thereto was the genuine signature of the testator. An erroneous instruction may be cured by one granted the opposite party which supplements, modifies, and clarifies the erroneous instruction, but it is not cured or corrected by one in conflict therewith. The two instructions referred to above are in sharp conflict as to the burden of proof upon the issue submitted to the jury, and they afforded the jury no safe guide in passing upon the conflicting evidence bearing upon the issue. Section 1612, Code of 1930, provides that on the trial of an issue devisavit vel non "the proponent of the will shall have the affirmative of the issue, and be entitled to all the rights of one occupying such position," while in the case of Sheehan v. Kearney, 82 Miss. 688, 21 So. 41, 35 L. R. A. 102, it was held that, upon an issue devisavit vel non, the burden of proof is on the proponent of the will

throughout. The granting of the instruction complained of is therefore error. Attention is also called to the erroneous use in this instruction of the word "competent" as descriptive of evidence that should be considered by the jury in determining the issue involved. Competency of the evidence offered is determined by the court, and it is the duty of the jury to consider all the evidence which the court has held to be competent and has admitted.

The appellant next contends that the verdict of the jury was against the overwhelming weight of the evidence, and that consequently his motion for a new trial should have been sustained by the court below. We do not think there is any merit in this contention. The testimony bearing upon the issue as to whether the signature to the will was the genuine signature of George B. Ellis was in sharp conflict, and there was ample testimony to support the verdict of the jury. It was peculiarly the province of the jury to pass upon this conflicting evidence, and the verdict cannot be set aside on the ground that it found no sufficient support in the evidence.

For the error above indicated in the instruction, however, the decree of the court below will be reversed, and the cause remanded for a new trial.

Reversed and remanded.